**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **STATE OF CONNECTICUT,** | : | **Case No. 3:19-cv-1597(VLB)** |
| | : | |
| **Plaintiff,** | : | **DEFENDANTS' MEMORANDUM** |
| | : | **IN SUPPORT OF THEIR MOTION TO** |
| **v.** | : | **DISMISS PLAINTIFF'S FIRST** |
| | : | **AMENDED COMPLAINT** |
| **U.S. DEPARTMENT OF HOMELAND** | : | |
| **SECURITY, et al.,** | : | |
| | : | |
| **Defendants.** | : | **May 18, 2020** |

**ORAL ARGUMENT REQUESTED**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ............................................................................... 2

II. LEGAL BACKGROUND ................................................................. 7

    A. APA Standard…………………………………………..…………………… 7

    B. Tenth Amendment …………………………………………………………7

III. STANDARD OF REVIEW ………………………………………………9

    A. Federal Rule of Civil Procedure 12 (b)(1)……………………………9

    B. Federal Rule of Civil Procedure 12(b)(6) ………………………….10

IV. ARGUMENT ……………………………………………………………11

    A. The Court Lacks Jurisdiction to Consider Plaintiff's Complaint …....….11

    B. Plaintiff Failed to State a Claim Upon Which Relief Can Be Granted…..25

V. CONCLUSION ……………………………………………….………..32

# TABLE OF AUTHORITIES

## Cases

*Allen v. Wright*,
  468 U.S. 737 (1984) ................................................................. 17

*Arar v. Ashcroft*,
  532 F.3d 157 (2d Cir. 2008) ......................................................... 9

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................. 28, 30

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................... passim

*Auerbach v. Bd. of Educ. of the Harborfields*,
  136 F.3d 104 (2d Cir. 1998) ......................................................... 9

*Bd. of Pardons v. Dumschat*,
  452 U.S. 458 (1981) ................................................................. 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................... passim

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................. 7, 25

*Bond v. United States*,
  564 U.S. (2011) ................................................................ 8, 27

*Brass v. Am. Film Techs., Inc.*,
  987 F.2d 142 (2d Cir. 1993) ........................................................ 11

*Clarke v. Secs. Indus. Ass'n*,
  479 U.S. 388 (1987) ................................................................ 20

*Delgado v. Quarantillo*,
  643 F.3d 52 (2d Cir. 2011) .................................................... passim

*First Equity Grp., Inc. v. Culver*, No. 3:08-cv-01893,
  2009 WL 3534900 (Feb. 11, 2009) .................................................... 9

*Freire v. U.S. Dep't of Homeland Sec.*,
  711 F. App'x 58 (2d Cir. 2018) ................................................................. 16

*Giammarco v. Beers*,
  170 F.Supp.3d 320 (D. Conn. 2016) ......................................................... 7

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991).................................................................................. 8

*Hayden v. Paterson*,
  594 F.3d 150 (2d Cir. 2010) ..................................................................... 10

*Heldman v. Sobol*,
  962 F.2d 148 (2d Cir. 1992) ..................................................................... 19

*In re Murphy*,
  A 037 214 0467 (BIA Apr. 16, 2002)................................................. 4, 6, 12

*In re Thompson*,
  A 045 882 854 (BIA Aug. 7, 2018) ..................................................... passim

*In re Walton*,
  A041 657 485 (BIA Dec. 5, 2019) ...................................................... passim

*I.N.S. v. Chadha*,
  462 U.S. 919 (1983).................................................................................. 14

*INS v. Legalization Assistance Project of L.A. Cty.*,
  510 U.S. 1301 (1993)................................................................................ 21

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ............................................................. 14, 15

*King v. Rell*,
  No. 3:06-cv-1703, 2008 WL 792818 (D. Conn. Mar. 20, 2008) .................. 9

*LaRoque v. Holder*,
  650 F.3d 777 (D.C. Cir. 2011) ................................................................... 8

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).................................................................................. 17

*Makarova v. United States,*
   201 F.3d 110 (2d Cir. 2000) ........................................................................... 9

*Matter of D-,*
   7 I&N Dec. 476 (BIA 1957) ............................................................................. 3

*Matter of Echeverria,*
   25 I&N Dec. 512 (BIA 2011) ........................................................................... 4

*Matter of R,*
   5 I&N Dec. 612 (BIA 1954) ......................................................................... 2, 3

*Matter of Tajer,*
   15 I&N Dec. 125 (BIA 1974) ........................................................................... 3

*McCarthy v. Dun & Bradstreet Corp.,*
   482 F.3d 184 (2d Cir. 2007) ......................................................................... 11

*McLaughlin v. Bronson,*
   537 A.2d 1004 (Conn. 1988) ........................................................................... 3

*New York v. United States,*
   505 U.S. 144 (1992) ........................................................................................ 8

*Palka v. Walker,*
   198 A. 265 (1938) ............................................................................................ 3

*Patrowicz v. Transamerica HomeFirst, Inc.,*
   359 F. Supp. 2d 140 (D. Conn. 2005) ......................................................... 11

*Raila v. United States,*
   355 F.3d 118 (2d Cir.2004) ............................................................................. 9

*Reno v. American-Arab Anti-Discrimination Comm.,*
   525 U.S. 471 (1999) ...................................................................................... 14

*Rothstein v. UBS AG,*
   708 F.3d 82 (2d Cir. 2013) ........................................................................... 19

*Ruiz v. Mukasey,*
   552 F.3d 269 (2d Cir. 2009) ......................................................................... 15

*Sarmiento v. United States*,
 678 F.3d 147 (2d Cir. 2012) ....................................................................... 10

*Shelby County v. Holder*,
 570 U.S. 529 (2013) ........................................................................ 27, 30, 31

*Singh v. USCIS*,
 878 F.3d 441 (2d Cir. 2017) ................................................................ 22, 23, 24

*State of N.Y. v. Mnuchin*,
 408 F.Supp.3d 399 (S.D. N.Y. Sept. 30, 2019) ........................................ 29, 30

*Thompson v. Barr*,
 No. 18-1823 (1st Cir.) ................................................................................ 13

*Vullo v. Office of Comptroller of Currency*,
 378 F.Supp.3d 271 (S.D. N.Y. May 2, 2019) ................................... 8, 27, 28

## Statutes

5 U.S.C. § 551 ......................................................................................... 2

5 U.S.C. § 701(a)(1) .......................................................................... 7, 22

5 U.S.C. § 702 ....................................................................................... 20

5 U.S.C. § 704 ......................................................................................... 7

8 U.S.C. § 155 (1917) ............................................................................ 2

8 U.S.C. § 1227(a)(2)(A)(vi) .................................................................. 2

8 U.S.C. § 1252(a)(5) ...................................................................... passim

8 U.S.C. § 1252(b)(9) ...................................................................... passim

## Rules

Fed. R. Civ. P. 8 ................................................................................... 10

Fed. R. Civ. P. 12(b)(1) ......................................................................... 9

Fed. R. Civ. P. 12(b)(6) ................................................................... 10, 11

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

The State of Connecticut's ("Plaintiff") first amended complaint fails to allege a cognizable claim and should therefore be dismissed. Plaintiff claims to have been singled out and harmed by Defendants based on an alleged policy change refusing to give effect to pardons issued by Connecticut's Board of Pardons and Paroles ("the Board") to individuals seeking protection under section 237(a)(2)(A)(vi) of the Immigration and Nationality Act's ("INA") ("Pardon Waiver Clause") and 22 CFR 40.21(a)(5).

The original complaint named multiple defendants, including various subcomponents of the U.S. Department of Homeland Security ("DHS") and the U.S. Department of Justice ("DOJ"). Defendants filed a motion to dismiss on January 27, 2020, asserting that the Court lacked jurisdiction and that the original complaint failed to state a cognizable claim. ECF 14-1, MTD. Rather than oppose that motion, Plaintiff amended its complaint, dismissing all defendants except for DHS and its Acting Secretary, Chad Wolf, and adding the U.S. Department of State ("DOS") and Secretary of State Michael R. Pompeo. ECF 19, Am. Compl.

The amended complaint asserts that, in 2017, DHS and DOS "abruptly abandoned decades of settled practice and began denying immigration benefits to people who received pardons from the State of Connecticut." Am. Compl. ¶ 1. As evidence of this alleged policy change, Plaintiff relies on, *inter alia*, the removal proceedings against an individual whose Connecticut pardon was not credited by the Board of Immigration Appeals ("BIA") in a 2018 unpublished decision. That individual, however, brought a petition for review before the U.S. Court of Appeals

for the First Circuit challenging the BIA's ruling; and that review is still pending. The amended complaint also alleges that DOS denied an individual entry into the United States despite his Connecticut pardon and argues, based on this allegation, that DOS issued a new discriminatory policy. Plaintiff relies on the Administrative Procedure Act ("APA") and the Tenth Amendment to the U.S. Constitution to support its arguments.

All of its claims must be dismissed. Although Plaintiff styles its amended complaint as seeking redress for harms to its interests, in substance, the complaint merely seeks an advisory opinion from this Court that would improperly reverse the outcome of individuals' removal proceedings; interfere with the ongoing resolution of that issue which is now squarely presented to the First Circuit; and, improperly review the decisions of consular officers. This Court lacks jurisdiction to grant such relief, and Plaintiff has failed to allege any other cognizable claim. Therefore, the amended complaint should be dismissed.

I.    INTRODUCTION

Plaintiff's amended complaint requests both declaratory and injunctive relief, pursuant to the APA, 5 U.S.C. § 551, *et seq.* ECF No. 19, Am. Compl. at 29-30. Plaintiff claims that "[i]n or about 2017 … Defendants sharply broke from settled practice and adopted a policy and practice of refusing to recognize and credit Connecticut pardons." *Id.* ¶ 6. Under section 237(a)(2)(A)(vi) of the INA,[1] 8 U.S.C. §

---

[1] The Pardon Waiver Clause only applies in the context of removability under INA § 237, and not in the context of admissibility under INA § 212. Connecticut failed to provide a citation in its amended complaint to any pardoning authority relevant to DHS in the admissibility context. Additionally, the Ninth and Eleventh Circuits have held that the Pardon Waiver Clause under INA § 237 does not apply in the

1227(a)(2)(A)(vi), certain deportability grounds based on criminal convictions are waived when the individual has "been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States." 8 U.S.C. § 1227(a)(2)(A)(vi). Similarly, 22 CFR 40.21(a)(5) provides that an alien shall not be considered inadmissible based on a conviction of a crime involving moral turpitude "for which a full and unconditional pardon has been granted by the President of the United States, by the Governor of a State of the United States...." Plaintiff claims Defendants have violated its rights and interests by not accepting pardons issued under its unique approach and asks this Court to intervene and require Defendants to deem Connecticut's pardons legally sufficient for relief from removal under the INA's Pardon Waiver Clause and 22 CFR 40.21(a)(5). Am. Compl. ¶ 9.

The INA provides that *only* individuals who have been granted a pardon by the "President of the United States or by the Governor of any of the Several States" may obtain the Pardon Waiver Clause's benefits. 8 U.S.C. § 1227(a)(2)(A)(vi). This language was adopted by Congress in 1952, replacing the preexisting statute that provided a categorical waiver for individuals who had received pardons. Am. Compl. ¶ 42 (citing 8 U.S.C. § 155 (1917)). Since the 1952 revision took effect, the BIA has consistently held that, for purposes of the Pardon Waiver Clause, it will only recognize executively derived pardons. *See Matter of R,* 5 I&N Dec. 612, 619 (BIA 1954) (explaining the history of the pardon waiver, which exhibits Congress's

---

admission context. *See Balogun v. U.S. Atty. Gen.,* 425 F.3d 1356 (11th Cir. 2005); *Aguilera-Montero v. Mukaskey*, 548 F. 3d 1248 (9th Cir. 2008).

"express intention to grant exemption from deportation only to those aliens who have obtained an *executive* pardon") (emphasis in original); *see also Matter of Tajer*, 15 I&N Dec. 125, 126 (BIA 1974) ("We recognize executive pardons granted by a State which has constitutional provision for executive pardons to be issued by other than the Governor of a State."). That includes situations where the Governor or state constitution delegates the executive pardon authority to a Board of Pardons. *See, e.g., Matter of D-*, 7 I&N Dec. 476, 477 (BIA 1957) (holding that a pardon from the Georgia Board of Pardons is sufficient for a pardon waiver because Georgia has a constitutional provision for executive pardons to be issued by the Board of Pardons); *Matter of Tajer*, 15 I&N Dec. at 126 (explaining that, in 1945, Georgia's Board of Pardons and Paroles was made a constitutional body and was conferred the clemency powers formerly conferred upon the Governor). DOS regulations establish that only executively derived pardons suffice to remove an alien's inadmissibility, explicitly providing that a "legislative pardon ... shall not serve to remove a ground of inadmissibility" based on a conviction for a crime involving moral turpitude.  22 CFR 40.21(a)(5).

"In Connecticut, the pardoning power is vested in the legislature[,] which has delegated its exercise to the board of pardons." *McLaughlin v. Bronson*, 537 A.2d 1004, 1006–07 (Conn. 1988) (citing *Palka v. Walker*, 198 A. 265 (1938), and *Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463 (1981)). Plaintiff's State Constitutional Convention of 1818 rejected a proposal to vest a full pardon power in the Governor and limited that official's authority to the grant of reprieves after conviction "until the end of the next session of the general assembly, and no longer." Conn. Const.

art. IV, § 10. Instead, the power to commute sentences remained with the legislature, and in 1883, the legislature vested "the jurisdiction of granting commutations of punishment and release, conditional or absolute, from the state prison" in the Board. Conn. Laws, Chap. 108 (1883). Connecticut's Attorney General has advised in a formal opinion that "the statute vests in the board unfettered discretion in making its pardon and commutation decisions," and that "[t]he authority of the [State's] Governor is limited 'to grant[ing] reprieves after conviction . . . until the end of the next session of the General Assembly and no longer.'" Conn. Att'y Gen. Op. No. 1992-020 (July 27, 1992). The Board has continuously exercised that jurisdiction since 1883. Conn. Gen. Stat. § 54-124a(a)(1).

In this regard, the BIA has not issued a published or binding decision on the issue of whether a Connecticut pardon falls within the purview of the Pardon Waiver Clause. *Matter of Echeverria*, 25 I&N Dec. 512, 519 (BIA 2011) (unpublished Board decisions are not binding precedents). Instead, it has now issued three conflicting, unpublished decisions each applying solely to that individual's case. First, in *In re Murphy*, A 037 214 0467 (BIA Apr. 16, 2002), the BIA found that Plaintiff's pardon was sufficient to cure removability based on a qualifying state-law conviction under the Pardon Waiver Clause. ECF 15-1. Next, in *In re Thompson*, A 045 882 854 (BIA Aug. 7, 2018), the BIA determined the Connecticut pardon was not sufficient to cure removability. ECF No. 1-1. Finally, since the filing of the original complaint here, the BIA issued its most recent decision on the issue, again declining to issue a precedential decision, finding that the individual's Connecticut

5

pardon fell within the purview of the Pardon Waiver Clause. *In re Walton*, A041 657 485 (BIA Dec. 5, 2019). ECF 15-2.[2]

The amended complaint, however, makes no allegation regarding any specific steps or actions taken by Defendants to recognize or reject Connecticut's pardons as sufficient to cure removability under the Pardon Waiver Clause or 22 CFR 40.21(a)(5). Plaintiff does not cite in its complaint any rulemaking, executive order, policy directive, or Attorney General opinion, but relies entirely on the unpublished, non-precedential, non-binding BIA decision in *Walton* rendered solely for an individual's removal proceedings.

Plaintiff's complaint fails for multiple reasons, as discussed further below. First and foremost, Plaintiff failed its burden to establish this Court's jurisdiction. The substance of the amended complaint seeks the review and reversal of an individual's removal proceedings. But the INA strictly channels jurisdiction for such challenges through a petition for review filed with the appropriate circuit court of appeals brought by the individual. 8 U.S.C. §§ 1252(a)(5) and (b)(9). Likewise, Plaintiff's collateral attacks on DOS visa decisions are barred under the well-established doctrine of consular nonreviewability. *Rivera de Gomez v. Kissinger*, 534 F.2d 518 (2d Cir.), *cert. denied*, 429 U.S. 987 (1976); *U.S. ex rel. Ulrich v. Kellogg*, 30 F.2d 984 (D.C. Cir.), *cert. denied*, 279 U.S. 630 (1929). Further, the Court lacks jurisdiction because Plaintiff fails to allege any injury fairly traceable to conduct by Defendants or that its claims fall within the statute's zone of interest. Second, the

---

[2] **On May 12, 2020, the BIA issued an unpublished order denying the government's motion to reconsider its December 5, 2019 *Walton* decision. Exhibit A.**

amended complaint fails to state a claim under the APA because it identifies no reviewable "final agency action." Third, the amended complaint fails to state a claim based on any violation of Plaintiff's constitutional rights. In short, the amended complaint seeks an improper advisory opinion from this Court. Accordingly, Plaintiff has failed to state a claim upon which any relief can be granted, and its complaint should be dismissed with prejudice.

## II.    LEGAL BACKGROUND

### A.    APA Standard

"To bring a claim under the APA, a plaintiff must show (1) a clear duty owed to [him] by the agency, (2) a duty which is mandatory and not discretionary, and (3) a clear right to relief." *Giammarco v. Beers*, 170 F.Supp.3d 320, 327 (D. Conn. 2016) (BRYANT, J.). Jurisdiction under the APA applies to "[a]gency action made reviewable by a statute and final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. This jurisdiction over challenges to final agency action, however, is proscribed where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1).  To be final, an agency action must: (1) "mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature"; and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

### B.    Tenth Amendment

The Tenth Amendment to the U.S. Constitution states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States,

are reserved to the States respectively, or to the people." U.S. Const. amend. X. "[T]he federal structure serves to grant and delimit the prerogatives and responsibilities of the States and the National Government vis-a-vis one another." *Bond v. United States*, 564 U.S. at 221, 225–26 (2011). The Tenth Amendment helps police this "vertical" separation of powers between federal and state governments. *LaRoque v. Holder*, 650 F.3d 777, 792 (D.C. Cir. 2011) (contrasting such separation with the "horizontal" separation of powers between the three branches of government); *see also Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). Hence "[i]f a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress." *New York v. United States*, 505 U.S. 144, 156 (1992).

The Tenth Amendment is judicially enforceable by both states and individuals as long as the plaintiff "is a party to an otherwise justiciable case or controversy." *Bond*, 564 U.S. at 226. To violate the Tenth Amendment, an action must "exceed[] the National Government's enumerated powers." *Id*. at 225. In other words, "it must categorically lie beyond federal authority." *Vullo v. Office of Comptroller of Currency*, 378 F.Supp.3d 271, 299 (S.D.N.Y. 2019). Accordingly, "[a] claim that turns on whether Congress articulated its choice with sufficient clarity simply does not implicate the Tenth Amendment." *Id*.

### III.    STANDARD OF REVIEW

#### A.    Federal Rule of Civil Procedure 12(b)(1)

The determination of the existence of subject matter jurisdiction is a threshold inquiry. *First Equity Grp., Inc. v. Culver*, No. 3:08-cv-01893, 2009 WL 353490, at *2 (D.Conn. Feb. 11, 2009) (BRYANT, J.) (citing *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *King v. Rell*, No. 3:06-cv-1703, 2008 WL 792818, at *2 (D. Conn. Mar. 20, 2008) (BRYANT, J.) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)). A motion to dismiss for lack of subject matter jurisdiction is the appropriate means to challenge standing inasmuch as standing concerns whether an application for relief presents a case or controversy upon which a federal court can exercise its Article III powers. *Auerbach v. Bd. of Educ. of the Harborfields,* 136 F.3d 104, 108 (2d Cir. 1998). In considering a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir. 2004). To successfully defend against a Rule 12(b)(1) motion to dismiss, the plaintiff must establish subject matter jurisdiction by a preponderance of the evidence. *Makarova,* 201 F.3d at 113.

#### B.    Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits a defendant to move to dismiss a complaint that "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "'To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotations and citations omitted); Fed. R. Civ. P. 8. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations omitted).

In considering a motion to dismiss for failure to state a claim, this Court follows a "two-pronged approach" to evaluate the sufficiency of the amended complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* "The plausibility standard is not akin to a probability

requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotations omitted).

The Court's review of a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## IV.    ARGUMENT

### A.    The Court Lacks Jurisdiction to Consider Plaintiff's Complaint.

#### 1. *The INA precludes jurisdiction over Plaintiff's claims against DHS.*

This Court lacks subject matter jurisdiction over Plaintiff's amended complaint. In 1996, Congress passed amendments to the INA through the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Several of IIRIRA's provisions—as well as provisions of the REAL ID Act of 2005, which refined IIRIRA's judicial review scheme—deprive this Court of jurisdiction over Plaintiff's claims against DHS. Specifically, 8 U.S.C. §§ 1252(a)(5) and (b)(9) deprive the Court of jurisdiction to review actions taken or proceedings brought to remove aliens from the United States or to grant injunctive relief restraining the INA's

enforcement outside of an individual's petition for review, and channel such challenges to the courts of appeals.

   a) **The amended complaint improperly challenges individuals' removal proceedings.**

Plaintiff presents its complaint as a challenge to agency action, but in substance it asks this Court to collaterally challenge ongoing immigration cases. To support its claim of an alleged change in policy, Plaintiff references the removal proceedings against four individuals. Am. Compl. ¶¶ 60-74. Plaintiff asserts that the bringing of removal proceedings against these individuals violates precedent but fails to mention contrary precedent or that the BIA decisions on which it relies are unpublished non-binding outside of the individual cases in which the decisions were made. *See* Am. Compl. ¶¶ 52, 69 (citing *Murphy* and *Walton*). Notably, Plaintiff alleges that Richard Marvin Thompson "is now entitled to waiver of removal … [but DHS] continues to detain him, consistently with Defendants' new policy and practice of denying Connecticut pardon recipients the benefit of their full and unconditional state pardons." *Id.* ¶ 64. Mr. Thompson, however, challenged his removability during his immigration proceedings, and the BIA found in an unpublished decision deciding that his Connecticut pardon did not qualify for relief under the Pardon Waiver Clause. ECF 1-1, *In re Thompson*, A 045 882 854 (BIA Aug. 7, 2018). The amended complaint, however, does reference the BIA's unpublished decision in *In re Walton*, A041 657 485 (BIA Dec. 5, 2019), which concluded Ms. Walton's Connecticut pardon satisfied the Pardon Waiver Clause. Am. Compl. ¶ 69. But Plaintiff fails to note that the *Walton* decision was also unpublished and nonbinding. *See* ECF 15-2, *Walton*.

The substance of Plaintiff's complaint seeks this Court's intervention into ongoing removal proceedings. Indeed, in its prayer for relief, Plaintiff requests, *inter alia*, that this Court "[h]old unlawful, vacate, and set aside Defendants' policy and practice of denying and withholding the immigration benefits of Connecticut pardons." *Id.* at 29 ¶ 4. In effect, Plaintiff's complaint asks this Court to review and reverse the BIA's decision in *Thompson* and grant the relief sought by that individual during his removal proceedings. Such a challenge in this Court is strictly proscribed under the INA. Indeed, Thompson pursued his own relief through a petition for review filed with the appropriate circuit court, through which Plaintiff presented its concerns to the First Circuit Court of Appeals as *amicus curiae*. *See Thompson v. Barr*, No. 18-1823 (1st Cir.) (argued July 23, 2019). The issue of Connecticut's pardon system is now before the First Circuit, and it could rule on the issue at any time.

    b) *8 U.S.C. §§ 1252(a)(5) and (b)(9) channel all challenges to removal orders and removal proceedings to the Courts of Appeals.*

This Court lacks jurisdiction over Plaintiff's complaint pursuant to 8 U.S.C. § 1252(b)(9), which channels *all* challenges to immigration proceedings and removal orders to the Courts of Appeals:

> With respect to review of an order of removal under subsection (a)(1), . . . [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . by any . . . provision of

13

> law (statutory or nonstatutory), to review such an order
> or such questions of law or fact.

8 U.S.C. § 1252(b)(9). The Supreme Court made clear that the term "final order of removal" in this context "includes all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing." *I.N.S. v. Chadha*, 462 U.S. 919, 938 (1983). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from removal proceedings]" to a court of appeals in the first instance. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§ 1252(a)(5), (b)(2). Section 1252(a)(5) reiterates that a petition for review is the exclusive means for judicial review of immigration proceedings:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) [concerning aliens not admitted to the United States].

8 U.S.C. § 1252(a)(5). "Taken together, §[§] 1252(a)(5) and [(b)(9)] mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016); *see id.* at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel

review of all claims, including policies-and-practices challenges . . . whenever they 'arise from' removal proceedings").

Here, Plaintiff's claims are barred under §§ 1252(a)(5) and (b)(9) because they "aris[e] from . . . proceeding[s] brought to remove . . . an alien from the United States" and likewise challenge an "action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9).

The U.S. Court of Appeals for the Second Circuit has held that where a litigant seeks to challenge a removal order, even indirectly, district courts do not have jurisdiction to review the litigant's claims. *Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011); *see also Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (only when the action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction). In *Delgado,* the Second Circuit explained, that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Id.* at 55. The Second Circuit held that the REAL ID Act divests district courts of jurisdiction to review even indirect challenges to removal orders. *Id.* The alien in *Delgado* brought a mandamus petition to compel U.S. Citizenship and Immigration Services ("USCIS") to adjudicate her I-212 application, which sought permission to reapply for admission after deportation. *Id.* at 54. The court employed a "substance of relief test" and determined that even though USCIS's grant of an I-212 waiver would not "per se prevent her removal," such a waiver was "a necessary prerequisite to her ultimate goal of adjustment of status." *Id.* at 55. The court reasoned that the I-212 waiver was "inextricably linked" to Delgado's removal order because a grant of adjustment of status would invalidate

15

Delgado's order of removal. *Id.* Accordingly, the court held that the mandamus petition was barred by the REAL ID Act. *Id.*

Applying *Delgado*'s "substance of relief test" to the amended complaint here, Plaintiff seeks relief amounting to an impermissible indirect challenge to Thompson's removal proceedings, over which this Court lacks jurisdiction. Plaintiff claims it is seeking to remedy its own injuries, but the relief sought challenges Thompson's removal order because it would reverse and invalidate the finality of the order. *See Freire v. U.S. Dep't of Homeland Sec.*, 711 F. App'x 58, 59 (2d Cir. 2018) ("[Section 1252(a)(5)] removes jurisdiction from the district courts over any challenge [to] the denial of an application for status adjustment of a party who is already subject to a removal order, if the relief requested in the challenge would invalidate the order.").

The same is true with respect to Plaintiff's request that the government be required to accord all future Connecticut pardon recipients relief under the Pardon Waiver Clause. *See* Am. Compl. at 30 ¶¶ 5-6. Such a requirement would be "inextricably linked" to removal orders and would constitute a "necessary prerequisite" for invalidating such removal orders. *Delgado*, 643 F.3d at 55. Thus, Plaintiff's complaint presents an indirect (if not direct) challenge that is barred under the INA's jurisdiction-limiting provisions.

2. *Plaintiff's collateral attacks on individual visa determinations are barred under the doctrine of consular nonreviewability.*

To support its claims against DOS, Plaintiff cites a passage from the Department of State's Foreign Affairs Manual and the 2017 "refus[al] to grant reentry" into the United States to Deniz Altinok, a citizen of Turkey. Am. Compl. ¶¶

16

57-61. Plaintiff alleges that Mr. Altinok was a "legal permanent resident of Connecticut who had left the United States to visit family in Turkey." *Id*. ¶ 60. Mr. Altinok applied for an immigrant visa at the U.S. Embassy in Ankara, and his application was denied on November 14, 2016 when a consular officer found him ineligible under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I). Exhibit B, Dus Declaration. These references demonstrate that Plaintiff's claims against DOS are impermissible collateral attacks on visa determinations by consular officers in violation of the doctrine of consular nonreviewability.

The decision to grant or deny a visa application rests with the consular officer. *See* 8 U.S.C. § 1201(a)(1); 22 C.F.R. §§ 42.71, 42.81; 8 U.S.C. § 1361 (providing that the applicant has the burden of proof to establish eligibility for a visa "to the satisfaction of the consular officer"). With exceptions not relevant here, no visa "shall be issued to an alien" if "it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law," or if "the consular officer knows or has reason to believe" that the alien is ineligible.  INA § 221(g), 8 U.S.C. § 1201(g); *see* 22 C.F.R. § 40.6.

It has long been acknowledged that the decision of a consular officer to grant or deny a visa is not subject to court review.  *See, e.g., De Castro v. Fairman*, 164 F. App'x. 930, 933 (11th Cir. 2006) (the district court cannot review a visa refusal under 28 U.S.C. § 1331, the APA, or the Mandamus Act based on the doctrine of consular nonreviewability); *Centeno v. Schultz*, 817 F.2d 1212 (5th Cir. 1987), *cert. denied*, 484 U.S. 1005 (1988); *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970 (9th Cir. 1986); *Ventura-Escamilla v. INS*, 647 F.2d 28 (9th Cir. 1981); *Rivera de Gomez*

17

*v. Kissinger*, 534 F.2d 518 (2d Cir.), *cert. denied*, 429 U.S. 987 (1976); *U.S. ex rel.*

*Ulrich v. Kellogg*, 30 F.2d 984 (D.C. Cir.), *cert. denied*, 279 U.S. 630 (1929); *Romero*

*v. Consulate of the U.S., Barranquilla*, 860 F. Supp. 319 (E.D. Va. 1994); *Garcia v.*

*Baker*, 765 F. Supp. 426 (N.D. Ill. 1990); *Hermina Sague v. United States*, 416 F.

Supp. 217 (D.P.R. 1976). This well-settled doctrine is supported by Supreme Court

precedent, the legislative history of the INA, and the terms of the statute itself.

"The Supreme Court has repeatedly affirmed that the legislative power of

Congress over the admission of aliens is virtually complete." *Ventura*, 647 F.2d at

30 (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), *Kleindienst v. Mandel*, 408 U.S. 753,

766 (1972)). The Ninth Circuit explained in holding that courts have no authority to

review consular visa denials that:

> The scope of judicial review is necessarily limited by the
> recognition that the power to exclude or expel aliens, as
> a matter affecting international relations and national
> security, is vested in the Executive and Legislative
> branches of government. *Fong Yue Ting v. U.S.*, 149 U.S.
> 698, 713 (1893). . .  As such, judicial intervention has been
> restricted to those matters the review of which has been
> 'authorized by treaty or statute, or is required by the
> paramount law of the Constitution.' *Hampton v. Mow Sun
> Wong*, 426 U.S. 88, 101 n.21 (1976).

*Ventura*, 647 F.2d at 30.

There is no statutory or other authority that authorizes judicial review of a

consular officer's decision to deny a visa. Rather, the INA confers upon consular

officers the authority to issue or deny a visa and specifically exempts the exercise

of this power from review by the Secretary of State. *See* INA § 104(a)(1), 8 U.S.C. §

1104(a)(1). As the court pointed out in *Ventura*, the legislative history establishes

that before the enactment of the INA, Congress considered and rejected the

suggestion that the consular officer's decision be administratively or judicially reviewable:

> Consular decisions--Although many suggestions were made to the committee with a view toward creating in the Department of State a semijudicial board, similar to the Board of Immigration Appeals, with jurisdiction to review consular decisions pertaining to the granting or refusals of visas, the committee does not feel that such body should be created by legislative enactment, nor that the power, duties and functions conferred upon consular officers by the instant bill should be made subject to review by the Secretary of State ….

647 F.2d at 30–31 (quoting H. Rep. No. 1365, 82nd Congress, 2d Sess., 1952 U.S.Code Cong. & Admin. News 1653, 1688).

Cases decided under the doctrine of consular nonreviewability make clear that the court has no authority to consider requests for review of consular visa decisions, and that plaintiff's request for relief is deficient as a matter of law. *See, e.g.*, *Ventura*, 647 F.2d at 30 (court had no authority to review consul's decision to deny immigrant visa application); *Rivera*, 534 F.2d at 519 (same); *Garcia*, 765 F. Supp. at 427 (court had no authority to review refusal of immigrant visa based on INA 212(a) exclusion finding); *Hermina*, 416 F. Supp. at 219 (same); *Perales v. Casillas*, 903 F.2d 1043, 1046 (5th Cir. 1990) (stating in *dicta* that immigrant visa applicants must establish that they will not likely become public charges and that "[t]he consular decision on the visa application is totally immune from review").

As the court noted in *Romero v. Consulate of U.S., Barranquilla*, 860 F. Supp. 319, 322 (E.D. Va. 1994), "the doctrine of consular nonreviewability is essentially without exception." Thus, a consular officer's visa determination is not subject to review, even if:

- the officer allegedly failed to follow Department regulations (*Burrafato v. Department of State*, 523 F.2d 554 (2d Cir. 1975), *cert. denied*, 424 U.S. 910 (1976));

- the applicant challenges the validity of the regulations on which the decision was based (*Ventura-Escamilla v. INS*, 647 F.2d 28 (9th Cir. 1981));

- the decision was alleged to have been based on a factual or legal error or was contrary to the INA (*Centeno v. Shultz*, 817 F.2d 1212, 1213 (5th Cir. 1987); *Loza-Bedoya v. INS*, 410 F.2d 343 (9th Cir. 1969); *Grullon v. Kissinger*, 417 F. Supp. 337 (E.D.N.Y. 1976), *aff'd without op.*, 559 F.2d 1203 (2d Cir. 1977));

- the applicant claims the decision is reviewable under the APA (*Romero v. Consulate of U.S., Barranquilla*, 860 F.Supp. 319, 324 (E.D. Va. 1994), citing *Haitian Refugee Center v. Baker*, 953 F.2d 1498, 1507 (11th Cir. 1992), *cert. denied*, 502 U.S. 1122 (1992); or;

- the applicant challenges the reasonableness of the determination (*U.S. ex rel. London v. Phelps,* 22 F.2d 288, 290 (2d Cir 1927), *cert. denied*, 276 U.S. 630 (1928); *Hermina Sague v. United States*, 416 F. Supp. 217, 220-21 (D.P.R. 1976)).

*See also Romero*, 860 F. Supp. at 322–23 (no review of visa refusal even if procedural irregularities are alleged, such as failure to follow proper refusal notification procedures); *Garcia v. Baker*, 765 F. Supp. 426, 428 (N.D. Ill. 1990) (no review of consular denial of immigrant visa even if State Department or consular officer failed to follow Attorney General's binding legal interpretation of INA); *Antonenko v. Department of State*, No. 03-5327, 2004 WL 1080159, at *1 (D.C. Cir. May 13, 2004) ("[T]o the extent the complaint challenged the decisions of consular officers to deny appellants visas, the district court correctly concluded that the complaint was barred by the doctrine of consular nonreviewability.").

Plaintiff's claims against DOS request that the Court "enjoin Defendants, and all of their officers, employees, and agents, and anyone acting in concert with them, from denying admissibility to the recipients of full and unconditional Connecticut

20

pardons, under circumstances where a waiver of ineligibility is warranted." Am. Compl. at 30 ¶ 6. These claims clearly seek to interfere with and review the decisions of consular officers, and accordingly this Court is barred from considering them.

### 3. *Plaintiff failed to plead Article III standing.*

Plaintiff's amended complaint also deprives this Court of jurisdiction because it fails to show any injury-in-fact that is fairly traceable to DHS and DOS. The party invoking federal jurisdiction bears the burden of establishing each of three elements required for Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Supreme Court has instructed that:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical.... *Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant,* and *not ... th[e] result [of] the independent action of some third party not before the court....* Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (internal quotation marks and citations omitted) (emphasis added). When the plaintiff is not the direct object of the challenged government action or inaction, standing is not precluded, but it is ordinarily "substantially more difficult" to establish. *Allen v. Wright*, 468 U.S. 737, 757–58 (1984). Plaintiff failed this standard.

a) *Summary of the injuries alleged in the amended complaint*

The amended complaint identifies three categories of interests Plaintiff claims were violated: (1) its "sovereign interest in promoting the integrity and efficacy of its laws, in protecting its core structure of state government against federal commandeering and coercion, and in preserving its equal sovereignty alongside its sister states;" (2) its "quasi-sovereign interest in promoting and protecting the health, safety, and well-being of its residents;" and (3) its "proprietary interests [because] Defendants' practices impose real administrative costs on Connecticut's state government, which absent intervention by this Court will be forced to restructure its pardon system, and even rewrite its state constitution, if it wishes to offer deserving noncitizens the full benefits of a second chance." Am. Compl. ¶¶ 13-15.

According to the amended complaint, "[i]f Connecticut does not bend to Defendants' whim and restructure its pardon system, it will suffer the costs of wrongful arrest and detention to its residents[, including] reduced tax payments received from noncitizen residents and increased social support benefits that the State will be forced to pay to some families that have been robbed of their breadwinners by Defendants' actions." *Id.* ¶ 15. Plaintiff alleges various economic metrics attributable to its immigrant residents, but acknowledges that it is not aware of how many individuals who have received Connecticut pardons are subject to removal in immigration proceedings. *Id.* ¶¶ 16-19.

**b) *The amended complaint fails to show any injury fairly traceable to Defendants*.**

The amended complaint asserts that its alleged injuries are due to actions taken by Defendants, but it fails to identify any specific official actions, rulings, or decisions outside of individual immigration law enforcement cases attributable specifically to DHS and DOS. Instead, it relies on conclusory assertions that Defendants "sharply broke from settled practice" and "began incorrectly insisting that Connecticut's pardon system was somehow unique, and uniquely disfavored." Am. Compl. ¶ 6. These assertions are exactly the type of "threadbare recitals" and "conclusory statements" held insufficient in *Iqbal*, 556 U.S at 678, and *Twombly*, 550 U.S. at 555. Accordingly the Court is "not bound to accept as true [these] legal conclusion couched as a factual allegation." *See Iqbal*, 556 U.S at 678 (quoting *Twombly*, 50 U.S. at 556).

"The traceability requirement for Article III standing means that the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'" *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (quoting *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992)). Here, the amended complaint utterly fails to establish any causal nexus between its claimed injuries and the Defendants' conduct because it fails to plead any facts establishing conduct by the Defendants establishing a new rule or policy leading to the unreasonably speculative allegations of lost tax revenue and administrative costs related to individuals who are subject to removal proceedings. Even assuming it had alleged any final agency action, it fails to show that recipients of its pardons are always or even usually Connecticut residents. Indeed, one of the alleged individuals cited in the amended

complaint is a Canadian national not even alleged to be a resident, who received a Connecticut pardon while a resident of Canada. *See* Am. Compl. ¶ 66. Plaintiff does not even specifically allege any lost revenue or expenditures connected specifically to any particular removal proceedings or visa denials.

For all of these reasons, Plaintiff failed to show a cognizable injury fairly traceable to Defendants, and accordingly, Plaintiff failed its burden of pleading Article III standing.

### c) *The amended complaint fails the "zone of interest" standard.*

Plaintiff's claims fall outside the zone of interests of the statutes they invoke. The APA does not "allow suit by every person suffering injury in fact." *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 395 (1987). The APA provides a cause of action only to one "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. To be "aggrieved," "the interest sought to be protected" must "be arguably within the zone of interests to be protected or regulated by the statute . . . in question," *Clarke*, 479 U.S. at 396 (modifications omitted). Plaintiff invokes no such interest here.

Nothing in the INA and its Pardon Waiver Clause, or in 22 CFR 40.21(a)(5), protects or regulates the interests of states to issue pardons. The Supreme Court has made clear in the context of a third party challenging an alleged immigration policy, the fact that a "regulation may affect the way [a third party] allocates its resources . . . does not give standing to an entity which is not within the zone of interests the statute meant to protect." *INS v. Legalization Assistance Project of L.A. Cty.*, 510 U.S. 1301, 1305 (1993) (O'Connor, J., in chambers). That reasoning

24

fully applies here. Plaintiff is not impaired in any way from pardoning individuals it has convicted of crimes, and Plaintiff has no role or authority in the determination of criteria for noncitizens' removal from or admission to the United States. Because Plaintiff is simply a bystander to the statutory scheme, the alleged effects on its resources are outside the statutory zone of interests. *See Legalization Assistance Project*, 510 U.S. at 1305 ("The fact that the INS regulation may affect the way an organization allocates its resources  . . . does not give standing to an entity which is not within the zone of interests the statute meant to protect."). Accordingly, the amended complaint fails to establish standing.

      **B.    Plaintiff Failed to State a Claim Upon Which Relief Can Be Granted.**

      Plaintiff asserts claims for relief pursuant to the APA (Claims I and II, Compl. ¶¶ 65-75), and the Tenth Amendment (Claims III and IV, *id.* ¶¶ 76-86). But, all of these claims fail. Again, even at the pleading stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678 (citing *Twombly*, 550 U.S. at 555). Moreover, "[a]lthough for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the amended complaint as true," the Court is not "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 50 U.S. at 556). Such conclusory statements here require dismissal.

### 1. *The amended complaint fails to state a claim under the APA.*

Plaintiff asserts four causes of action citing the APA,[3] but all suffer the same fatal flaw: they fail to allege any final agency action reviewable by this Court. The APA only permits challenges to final agency decisions and expressly does "not empower courts to set aside agency actions where other 'statutes preclude judicial review.'" *Singh v. USCIS*, 878 F.3d 441, 445 (2d Cir. 2017) (quoting 5 U.S.C. § 701(a)(1)). The amended complaint here does not satisfy these requirements.

As a preliminary matter, the amended complaint never clearly states exactly what agency action it is challenging. Plaintiff claims that "[o]n information and belief, for 65 years—from the time of the passage of the INA in 1952 until 2017—the federal government afforded Connecticut's pardons the same respect afforded to discretionary pardons." Am. Compl. ¶ 4. According to the amended complaint, "[i]n or about 2017 … Defendants sharply broke from settled practice and adopted a policy and practice of refusing to recognize and credit Connecticut pardons." Am. Compl. ¶ 6. Plaintiff does not cite any order, regulation, or rulemaking in support of this allegation, instead relying exclusively on its understanding of individual immigration cases and visa decisions. But, even taking Plaintiff's allegations as true, the amended complaint wholly undermines this allegation.

According to Plaintiff, Connecticut pardons were deemed sufficient for the Pardon Waiver Clause across the federal government from 1952 to 2017, but Plaintiff's citation to the April 2002 BIA decision in *Murphy* invalidates this central

---

[3]     Claim I, Am. Compl. ¶¶ 78-81 ("not in accordance with law"); Claim II, *id.* ¶¶ 82-85 ("arbitrary and capricious"); Claim III, *id.* ¶¶ 86-93 (Tenth Amendment); Claim IV, *id.* ¶¶ 94-100 ("violation of equal sovereignty").

premise. *See, e.g.,* Am. Compl. ¶ 52. DHS did not exist until November 2002, and the legacy Immigration and Nationality Service ("INS") served as the federal agency tasked with enforcing the immigration laws during Murphy's removal proceedings. The Homeland Security Act (HSA) of 2002, (Pub.L. 107–296, 116 Stat. 2135, enacted November 25, 2002). In that case, the BIA issued an unpublished, nonbinding decision that Murphy's Connecticut pardon should be credited, reversing an Immigration Judge's order of removal. ECF 15-1 at 1-2. That non-precedential decision, however, does not state that the INS credited the Connecticut pardon as within the purview of the Pardon Waiver Clause. In other words, Plaintiff's allegations do not establish any abrupt abandonment of "decades of settled practice," but instead suggests that fifteen years prior to 2017 the legacy INS did not credit a Connecticut pardon. Moreover, the BIA's decision in that case did not settle the issue because it was nonbinding. *Matter of Echeverria*, 25 I&N Dec. at 519.

Additionally, with regard to DOS, Plaintiff relies on the Foreign Affairs Manual but the cited regulatory language dates back to 1991, *see* 56 FR 30422, July 2, 1991, and plaintiff does not even allege any change in practice with respect to DOS's application of the regulations. Additionally, the single individual visa denial alleged in the complaint predates 2017, *contra* Plaintiff's allegations of a post 2017 change in policy. Ex. B, Dus Decl.

The only agency actions alleged in the amended complaint are individual removal proceedings and one visa denial, which well-established law precludes this Court from reviewing. Because Plaintiff failed to allege any final agency action

by Defendants, its APA claims fail as a matter of law, and its amended complaint should be dismissed.

 2. *The amended complaint fails to state a constitutional violation.*

Plaintiff asserts two constitutional claims based on the Tenth Amendment. First, Plaintiff contends that "Defendants' policy and practice of disregarding Connecticut's pardons … violates the Tenth Amendment, because it impermissibly and coercively intrudes into Connecticut's sovereign power to structure its own government," and because Defendants "seek to dictate not just the *content* of Connecticut law but the *processes* and *mechanisms* by which Connecticut makes it law." Am. Compl. ¶ 89 (emphasis in original). Second, Plaintiff asserts that "Defendants' conduct violates Plaintiff's constitutional right to equal sovereignty," relying exclusively on the Supreme Court's decision in *Shelby County v. Holder*, 570 U.S. 529, 544 (2013), striking down the Voting Rights Act's preclearance provision. Am. Compl. ¶¶ 94-100. Both of these claims for relief fail as well.

 a) *Plaintiff fails to assert any otherwise cognizable claim.*

First, the Tenth Amendment is judicially enforceable only as long as the plaintiff "is a party to an otherwise justiciable case or controversy." *Bond*, 564 U.S. at 226. For all of the reasons already stated, Plaintiff has not made out any other justiciable claim, and accordingly it cannot state a claim under the Tenth Amendment. *Id.*

 b) *The amended complaint does not allege that Defendants exceeded any enumerated powers.*

Second, to violate the Tenth Amendment, an action must "exceed[] the National Government's enumerated powers." *Id.* at 225. In other words, "it must

categorically lie beyond federal authority." *Vullo v. Office of Comptroller of Currency*, 378 F.Supp.3d 271, 299 (S.D.N.Y. May 2, 2019). Here, it cannot be reasonably disputed that "[t]he federal power to determine immigration policy is well settled." *Arizona v. United States*, 567 U.S. 387, 394 (2012). The Supreme Court has explained that "[t]he Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Id*. This authority rests, in part, on express Constitutional provisions of authority, including "the National Government's constitutional power to 'establish an uniform Rule of Naturalization' Art. I, § 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations." *Id*. at 394–95.

"Congress has specified which aliens may be removed from the United States and the procedures for doing so." *Id*. at 396. In adopting the Pardon Waiver Clause, Congress exercised this exclusive power by determining that individuals who receive certain types of pardons—but not all pardons—are not removable on the basis of the underlying state conviction. Indeed, Plaintiff acknowledges that there exists a category of individuals who have received some form of state government pardon, but who do not qualify for the Pardon Waiver Clause. Compl. ¶ 45 ("As the BIA explained: 'By limiting the benefit [of the Pardon Waiver Clause] to presidential and gubernatorial pardons only, Congress has manifested an express intention to grant exemptions from deportation only to those aliens who have obtained an executive pardon.'"). In other words, it is not contested that only the Federal Government decides who is eligible for the benefits provided by the

Pardon Waiver Clause, and states' policy choices impact the eligibility of individuals for those benefits.

Plaintiff disagrees with how the Defendants allegedly interpret the Pardon Waiver Clause and 22 CFR 40.21(a)(5), but it fails to show how this application of federal immigration law and regulation injures Plaintiff's rights to sovereignty and equal treatment. Inherent in its argument is the recognition that the Federal Government decides immigration policy. However, Plaintiff's lawsuit asks this Court to turn that arrangement upside down by forcing the Federal Government to change immigration policy to suit Plaintiff's preferences.

Plaintiff's arguments are akin to those rejected by the Southern District of New York in *State of N.Y. v. Mnuchin*, 408 F.Supp.3d 399, 416–17 (S.D.N.Y. Sept. 30, 2019), *appeal pending*, No. 19-3962 (2d Cir.). The State of New York challenged caps placed on tax deductions for state and local taxes imposed by federal law based on, *inter alia*, the Tenth Amendment. *Id*. New York's main argument "rel[ied] on the notion that the Tenth Amendment preserves states' 'power to tax all property, business, and persons, within their respective limits, and so bars 'improper federal interference with the states' taxing power.'" *Id*. at 416. As the court noted, however, "[e]ven absent an uncapped [state and local tax] deduction, ... states remain free to exercise their tax power however they wish." *Id*. (internal citations omitted). The court explained further:

> To be sure, the SALT cap, like any other feature of federal law, makes certain state and local policies more attractive than others as a practical matter. But the bare fact that an otherwise valid federal law necessarily affects the decisional landscape within which states must choose how to exercise their own sovereign authority hardly

renders the law an unconstitutional infringement of state
power.

*Id.* at 416–17. In concluding the federal cap did not violate the Tenth Amendment,
the court stated that "[t]he cap, like any federal tax provision, will affect some
taxpayers more than others and, by extension, will affect some states more than
others. But the cap, again like every other feature of the federal Tax Code, is a part
of the landscape of federal law within which states make their decisions as to how
they will exercise their own sovereign tax powers." *Id.* at 423.

The same rationale operates here. The Constitution expressly enshrines the
power to regulate immigration and naturalization with the Federal Government. The
decisions made by the Federal Government will predictably have an impact on how
the states choose to exercise their own sovereign powers, but "the bare fact that
an otherwise valid federal law necessarily affects the decisional landscape within
which states must choose … hardly renders the law an unconstitutional
infringement of state power." The rationale is even more pronounced here because
in *Mnuchin*, the state undisputedly had the sovereign power to impose taxes, and
here, Plaintiff undisputedly does not have the sovereign power to make
determinations about the operation of the U.S. immigration system. *Arizona*, 567
U.S. at 394.

### c) *Shelby County v. Holder does not support Plaintiff's claim for a violation of its "right to equal sovereignty."*

Finally, citing the Supreme Court's decision to strike down one of the Voting
Rights Act's key enforcement mechanisms, Plaintiff argues that its "right to equal
sovereignty" is violated. Am. Compl. ¶ 95. Relying on *Shelby County*, Plaintiff

contends that "the Supreme Court taught … that the federal government must make a showing of 'current need' if it intends to impose disparate treatment among the states and their laws, departing form the principle of 'constitutional equality of the States' that 'is essential to the harmonious operation of the scheme upon which the Republic was organized.'" Am. Compl. ¶ 95 (quoting *Shelby County*, 570 U.S. at 542).

Plaintiff's embrace of *Shelby County* is misplaced, and its argument fails. In *Shelby County*, the Supreme Court determined that the Voting Rights Act's requirement that states and localities with a history of racial discrimination in elections obtain preclearance before making changes to their election laws violates the principal of "equal sovereignty" under the Tenth Amendment. *Id.* at 543–44. The provision at issue there created a powerful mechanism that expressly directed states to adhere to federal law. Here, as already explained, the amended complaint does not identify any specific government action directing Connecticut to take any action. Instead, the amended complaint alleges that Congress enacted the current Pardon Waiver Clause to limit the category of state-issued pardons that qualify for the waiver; that the various permutations of immigration law enforcement over the years have litigated the issue of which pardons qualify before the BIA; and that the BIA has decided that some pardons qualify and some do not based on its interpretation of state law. That does not describe anything like the enforcement mechanism struck down in *Shelby County*, and Plaintiff's reliance on that decision is unavailing.

Plaintiff desires that its pardons will have the effect of curing immigration deficiencies, but the power to determine a noncitizen's eligibility to be admitted to or remain in the United States rests solely with the Federal Government. Accordingly, Plaintiff fails to make out a claim under the Tenth Amendment.

## V.      CONCLUSION

Plaintiff fails to establish that the Court has jurisdiction and fail to raise any cognizable claim. Accordingly, the Court should dismiss Plaintiff's amended complaint with prejudice.


Dated: May 18, 2020                    Respectfully Submitted,

                                       JOSEPH H. HUNT
                                       *Assistant Attorney General*

                                       WILLIAM C. PEACHEY
                                       *Director*

                                       WILLIAM C. SILVIS
                                       *Assistant Director*

                                       /s/ T. Benton York
                                       T. BENTON YORK (U.S.D.C. CT phv10355)
                                       *Trial Attorney*
                                       U.S. Department of Justice, Civil Division
                                       Office of Immigration Litigation – DCS
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, D.C. 20044
                                       Tel: (202) 598-6073
                                       Email: Thomas.B.York@usdoj.gov
                                       *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2020, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Connecticut by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By:  /s/ T. Benton York
T. BENTON YORK
Trial Attorney
United States Department of Justice
Civil Division