UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **STATE OF CONNECTICUT**<br><br>*Plaintiff*,<br><br>v.<br><br>**U.S. DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS**, in his official capacity as Secretary of the Department of Homeland Security; **U.S. DEPARTMENT OF STATE;** and **ANTONY BLINKEN**, in his official capacity as Secretary of State.<br><br>*Defendants*. | No.3:19-cv-01597-VLB |

## REPORT OF PARTIES' RULE 26(f) PLANNING MEETING

On April 8, 2021, the Court ordered the parties to file, on or before April 22, 2021, "a written statement signed by all counsel of record demonstrating that this case is exempt from the requirement of filing a form 26(f) report; or (2) a form 26(f) report." ECF No. 41.

Defendants maintain that Plaintiff's case is exempt from the requirement of filing a form 26(f) report because Plaintiff's complaint asserts claims under the Administrative Procedure Act ("APA"), seeking review of alleged "decisions of administrative agencies." L.R. 26(f)(3). Defendants assert that Plaintiff has failed to identify any final agency action, but that if the Court disagrees, no discovery beyond an administrative record is justified. *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44 (1985).

1

Plaintiff disagrees and seeks discovery. Plaintiff has asserted both APA and constitutional claims, and contends this is not a case falling under Local Rule 26(f)(3). Plaintiff asserts that even if it had only advanced APA claims, full discovery would be appropriate to determine the reasoning behind Defendants' actions precisely because Defendants did not follow the formal administrative process in promulgating their alleged policies. Plaintiff maintains that discovery is also appropriate in support of key Plaintiff claims that necessarily go beyond the administrative record.

The parties therefore respectfully submit the following 26(f) report:

## I. CERTIFICATION

Undersigned counsel, after consultation with their clients, certify that (a) they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II. JURISDICTION

### A. Subject Matter Jurisdiction

Plaintiffs contend that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This action arises under the Administrative Procedure Act, 5 U.S.C. § 706, and the Tenth Amendment of the U.S. Constitution.

Defendants contend that the Court does not have subject matter jurisdiction. First, Plaintiff's claims against DHS are moot because DHS has

issued a policy statement that it will treat Connecticut's pardons as effective for purposes of the Pardon Waiver Clause. Second, Plaintiff's claims against DHS are barred by the jurisdiction-channeling provisions of the Immigration and Nationality Act ("INA"), which require that judicial review of questions of law and fact arising out of removal proceedings is only available through a petition for review of a final order of removal filed by the noncitizen ordered removed with the applicable federal court of appeals after exhausting all administrative remedies as of right. Third, the Court lacks subject matter jurisdiction over Plaintiff's claims against the Department of State because they are barred by the doctrine of consular nonreviewability. Fourth, Plaintiff lacks Article III standing to bring this challenge.

Plaintiff argues that: (1) DHS' new policy constitutes voluntary cessation, so – as this Court has already ruled – the case is not moot. ECF No. 40 ("Thus the issue raised by Plaintff appears ripe and not moot."); (2) Because Plaintiff seeks forward-looking declaratory and injunctive relief, and explicitly disavows second-guessing any immigration court or consular decision in any individual case, this case is justiciable; and (3) Plaintiff – a State, and therefore entitled to special standing solicitude – has Article III standing because it asserts facts plausibly showing injuries to its sovereign, quasi-sovereign, and proprietary interests.

B. <u>Personal Jurisdiction</u>

Defendants do not contest personal jurisdiction.

### III. BRIEF DESCRIPTION OF CASE

The State of Connecticut brings constitutional and Administrative Procedure Act claims, seeking relief from Defendants' alleged policies and practices of denying immigration benefits to recipients of Connecticut pardons.

### A. Plaintiff's Summary of Its Claims

Like every other state, Connecticut grants executive pardons to ex-offenders who earn a second chance. Those state pardons come with important entitlements to immigration benefits. For instance: normally, noncitizens convicted of some crimes would be subject to arrest, detention, and removal. But the Pardon Waiver Clause of the INA guarantees protection from those sanctions for immigrants who earn state executive pardons. 8 U.S.C. § 1227(a)(2)(A)(vi). And, while people convicted of crimes of moral turpitude are generally ineligible for admission to the United States, federal regulations carve out an exception for recipients of state executive pardons. 22 CFR § 40.21(a)(5).

But Connecticut alleges that Defendants have policies and practices of illegally and unconstitutionally arresting, detaining, and excluding recipients of Connecticut's pardons. Connecticut alleges that Defendants – the Department of Homeland Security (DHS) and its secretary, and the Department of State (DOS) and its secretary – have applied the law correctly to recipients of executive pardons from 49 states, but singled out Connecticut and its pardonees for worse treatment.

Connecticut's Amended Complaint states four claims for relief. In Count 1, Connecticut alleges that Defendants' policies and practices are "not in accordance with law," 5 U.S.C. § 706(2)(A), since they contravene the clear

meaning of existing laws and regulations. In Count 2, Connecticut alleges that the policies and practices are "arbitrary and capricious," 5 U.S.C. § 706(2)(A), since, *inter alia*, they depart from a long history of settled practice without valid explanation. In Count 3, Connecticut alleges that the policies and practices violate State's prerogatives under the Tenth Amendment. In Count 4, Connecticut alleges that, by singling out Connecticut and its residents for discriminatory treatment, Defendants are violating the constitutional principle of equal sovereignty.

    B.  <u>Defendants' Summary of Their Defenses</u>

Defendants assert that Plaintiff's Amended Complaint must be dismissed because the Court lacks jurisdiction over its claims, *supra*, and even if jurisdiction was appropriate, Plaintiff failed to plead any cognizable claim.

The INA's Pardon Waiver Clause waives deportability for individuals who would otherwise be deportable from the United States based solely on a conviction of certain enumerated categories of criminal offenses if they have received a full and unconditional pardon granted "by the President of the United States or by the Governor of any of the several States." 8 U.S.C. § 1227(a)(2)(A)(vi). The Pardon Waiver Clause does not apply to admissibility determinations for noncitizens seeking admission to the United States. Per Department of State regulation, however, inadmissibility due solely to a conviction for a crime involving moral turpitude is waived if the noncitizen has received a pardon for that crime by "the President of the United States, by the Governor of a State of the United States, by the former High Commissioner for

Germany acting pursuant to Executive Order 10062, or by the United States Ambassador to the Federal Republic of Germany acting pursuant to Executive Order 10608." 8 C.F.R. § 40.21(a)(5). This regulation applies to actions by the Department of State in issuing visas, not determinations of admissibility made by DHS.

Despite the plain language of the Pardon Waiver Clause that limits its applicability to pardons issued by the President or a state Governor, the Board of Immigration Appeals ("BIA") has interpreted the clause to cover a broader category of state pardons. Plaintiff claims that Defendants determined pardons issued by Connecticut's Board of Pardons and Parole met the Pardon Waiver Clause's criteria until sometime in 2017, when it believes DHS and the Department of State stopped recognizing Connecticut's pardons for purposes of the Pardon Waiver Clause.

Plaintiff's claims fail under the APA because it has not alleged or shown any final agency action to review. Indeed, DHS issued for the first time a department-wide statement of policy directing that Connecticut's pardons be deemed qualifying for the PWC under the BIA's criteria, and its component agencies have acted accordingly to dismiss removal proceedings for individuals with Connecticut pardons for qualifying convictions where those convictions serve as the sole grounds of deportability. Accordingly, there is no final agency action adverse to Connecticut.

Even if there were a final agency action establishing a policy of denying PWC benefits to Connecticut pardonees, Plaintiff still fails to show that such an

6

interpretation was not reasonable, much less arbitrary and capricious. The statute containing the Pardon Waiver Clause and regulation at issue plainly limits the types of pardons that qualify for waiver of deportability. The Department of State's regulation also plainly limits the types of convictions that may be waived in relation to eligibility for visa issuance.

Finally, Plaintiff's Constitutional claims also fail. The Federal Government's "power to determine immigration policy is well settled." *Arizona v. United States*, 567 U.S. 387, 394 (2012). The fact that the Federal Government's exercise of powers exclusively entrusted to it by the Constitution might impact the way the states might order their operations does not create any Constitutional injury. *State of N.Y. v. Mnuchin*, 408 F.Supp.3d 399, 416–17 (S.D. N.Y. Sept. 30, 2019), *appeal pending*, No. 19-3962 (2d Cir.).

## IV. STATEMENT OF UNDISPUTED FACTS

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The following material facts are undisputed:

A. Under Connecticut's current pardon system, the state's sovereign power to pardon is vested in a Board of Pardons and Paroles established by the state legislature. Connecticut has vested the power to pardon in the Board since 1883.

B. The members and chairperson of Connecticut's Board of Pardons and Parole are appointed by Connecticut's Governor.

C. As of April 22, 2021, in Connecticut, the Board of Pardons and Parole

has sole, unfettered discretion to grant or deny a pardon.

D. Other than the Board, no official or entity in Connecticut is authorized to exercise the State's sovereign power to pardon.

## V. CASE MANAGEMENT PLAN

### A. Initial Disclosures

Plaintiff proposes that each party will make its initial disclosures by May 15, 2021.

Defendants maintain that no initial disclosures are appropriate because Plaintiff's claims are brought pursuant to the APA. Accordingly, Defendants assert that if any of Plaintiff's claims remain following the Court's ruling on Defendants' Motion to Dismiss, a certified administrative record should be the sole record for resolving Plaintiff's claims. Defendants therefore propose that any administrative record be produced within 60 days of the Court's Order on Defendants' motion to dismiss if any claims remain.

### B. Scheduling Conferences

The parties request a pretrial telephone or video-conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

### C. Early Settlement Conference

The parties certify that they have considered the potential benefits of attempting to settle the case. Counsel will continue to discuss settlement possibilities if and when they arise.

Plaintiff believes that it could be productive for the court to refer the matter to a magistrate judge for mediation of a possible settlement. But Plaintiff does not

believe that the referral, or any settlement conference, should be grounds for delaying the discovery schedule and case management plan articulated in this report.

**Defendants DHS and its Secretary** are willing to participate in good faith mediation with a magistrate judge. Defendants maintain that no discovery is appropriate in this case, but a stay or appropriate extension of deadlines should be a precondition to engaging in mediation.

**Defendants Department of State and its Secretary** do not believe that mediation would be productive at this time.

**D. <u>Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings</u>**

The parties currently do not believe that joinder of additional parties or further amendment of the pleadings will be required.

Defendants' pending Motion to Dismiss will be fully briefed with the April 22, 2021 filing of Defendants' "Reply" to Plaintiff's "Opposition."

**E. <u>Discovery</u>**

   a. Recognizing that the precise contours of the case may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case":

**Plaintiff:** Defendants, who claim there was no agency action, cannot evade discovery by limiting Plaintiff to an administrative record that they deny exists.

9

**Plaintiff must be able to aim discovery at key issues relevant to its claims and Defendants' defenses – including, for instance, discovery going to Defendants' actions towards other states, which are material to Plaintiff's Equal Sovereignty claim and to its claim that Defendants' actions were arbitrary and capricious.**

**Defendants: Defendants maintain that no discovery is appropriate because Plaintiff's claims are brought pursuant to the APA, and are therefore subject to Local Rule 26(f)(3). Should any of Plaintiff's claims survive Defendants' Motion to Dismiss, a certified administrative record is the only appropriate information for production in this case.**

    b. **Plaintiff anticipates that discovery will be needed on, at a minimum, the following subjects:**

        a) **Plaintiff will seek discovery of the full administrative record(s).**

        b) **Plaintiff will seek discovery of instances in which Defendants have implemented their policies and practices, including by arresting, detaining, removing, or excluding immigrants who have received Connecticut pardons.**

        c) **Plaintiff will seek discovery of instances in which Defendants have afforded benefits under the Pardon Waiver Clause and/or 22 CFR § 40.21(a)(5) to immigrants pardoned by states with pardon systems similar or functionally identical to Connecticut's.**

    c. **Plaintiff proposes that all discovery, including depositions of**

   expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced by May 1, 2021 and completed by July 31, 2021. Defendants maintain that no discovery is appropriate because Plaintiff's claims are brought pursuant to the APA, and are therefore subject to Local Rule 26(f)(3). Notwithstanding this objection, Defendants assert that three months will not be sufficient to complete discovery. Defendants state they are unaware at this time of the scope and form of information that Plaintiff might seek. Accordingly, if the Court orders discovery, Defendants request that the Court set a follow-up conference for the purpose of determining a reasonable schedule based on the scope of electronically-stored information that Plaintiff will seek.

d. Discovery will not be conducted in phases.

e. N/A

f. Plaintiff anticipates that it will require a total of no more than 10 depositions of fact witnesses. The depositions will commence by June 1, 2021 and be completed by July 31, 2021. Defendants maintain that no depositions are appropriate because Plaintiff's claims are brought pursuant to the APA, and are therefore subject to Local Rule 26(f)(3).

g. The parties will not request permission to serve more than 25 interrogatories.

h. Neither Plaintiff nor Defendants intends to call expert witnesses

at trial.

i. **N/A**

j. **N/A**

k. **Plaintiff does not seek damages.**

l. **Defendants request that the Court permit additional time to confer regarding electronic discovery protocols. Defendants believe that, until the Court has resolved the pending Motion to Dismiss, it is unclear to what extent electronic discovery will be pursued. Defendants maintain that Plaintiff has identified no agency action, and that any surviving claims should be resolved exclusively on an administrative record. If the Court ultimately disagrees, additional time is necessary for the Parties to evaluate to what extent electronic discovery will be at issue, and accordingly what protocols can be agreed to.**
**Plaintiff does not believe more time is necessary, and have proposed the following protocol: The parties agree to the following procedures for the preservation, disclosure and management of electronically stored information: The parties will preserve all ESI and accept disclosure of ESI in the form(s) in which the information is ordinarily and customarily maintained in the usual course of business or, if not reasonably usable in that form, as searchable PDF documents. Electronic mail should include attachments to the email and indicate to whom the email**

was addressed and whether it was a reply. Upon request and if reasonably available, a party shall make diligent efforts to produce any electronically-stored spreadsheet or database in its native format (*e.g.* Microsoft Excel) rather than in PDF format. All electronically stored documents created by a word processing program are to be produced in the native format, if reasonably available, rather than in PDF format. To the extent any ESI is preserved only in printed form, such information may be produced in PDF format. ESI may be produced on CD-ROM. The parties will undertake to search their electronically stored records for responsive documents and information by utilizing search terms and procedures known by the disclosing party to be reasonably calculated to locate responsive documents and information.

m. Undersigned counsel (after consultation with their clients) have also discussed the location(s), volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms. The parties agree to the following procedures for the preservation, disclosure and management of such information: The parties will preserve all information stored in paper or other non-electronic forms and accept disclosure of this information via certified mail delivery. The parties will undertake to search their paper and non-electronic records for responsive documents and

    information by utilizing procedures known by the disclosing party to be reasonably calculated to locate responsive documents and information. Defendants assert that the scope of discovery remains unclear at this stage.

n. Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedures for asserting claims of privilege after production: If any information that is clearly marked as being attorney-client privileged or subject to work-product protection is disclosed, or if information that obviously comprises privileged attorney-client communications or attorney work product is disclosed, the party to whom it is disclosed will notify opposing counsel and the disclosing party will have thirty days to assert the privilege and seek the return of the information. The party to whom the information is disclosed agrees not to review the information after recognizing that a privilege or work- production protection applies and further agrees to not duplicate that information or further disclose it. Defendants request that the Court permit additional time to confer regarding claw-back protocols for electronically-stored information once the scope of electronic discovery is better understood.

F. <u>Dispositive Motions</u>

   a. <u>Motions to Dismiss</u>

The Defendants' Motion to Dismiss will be fully briefed with the April 22, 2021, filing of Defendants' "Reply" to Plaintiff's "Opposition." Defendants have requested oral argument for their Motion.

   b. <u>Summary Judgment Motions</u>

Assuming the completion of all discovery by July 31, 2021, Plaintiff proposes that the parties file their cross-motions for summary judgment, including a joint statement of undisputed material facts, on or before August 30, 2021.

Defendants propose the following deadlines:

Plaintiff's summary judgment motion within 30 days of production of the certified administrative record;

Defendants' cross-motion for summary judgment and opposition to Plaintiff's summary judgment motion within 21 days of Plaintiff's motion;

Plaintiff's cross-opposition and reply within 21 days of Defendants' cross-motion;

Defendants' reply within 14 days of Plaintiff's cross-opposition.

G. <u>Joint Trial Memorandum</u>:

The parties anticipate that the case will be resolved through cross-motions for summary judgment, and no trial will be necessary.

VI. TRIAL READINESS

The parties anticipate that the case will be resolve through cross-motions

for summary judgment, and no trial will be necessary.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Respectfully submitted this 22nd of April, 2021,

WILLIAM TONG
Attorney General, State of Connecticut

MARGARET Q. CHAPPLE (CT # 05550)
Deputy Attorney General

VANESSA ROBERTS AVERY (CT # 21000)
Associate Attorney General

By: */s/ Joshua Perry*

JOSHUA PERRY (CT # 439166)
Special Counsel for Civil Rights
165 Capitol Avenue Hartford, CT 06106-0120
(860) 808-5318
Joshua.perry@ct.gov
Attorneys for Plaintiff State of Connecticut


BRIAN M. BOYNTON
*Acting Assistant Attorney General*,
*U.S. Department of Justice, Civil Division*

WILLIAM C. PEACHEY
*Director, Office of Immigration of Litigation,*
*District Court Section*

WILLIAM C. SILVIS
*Assistant Director*

/s/ T Benton York
T. BENTON YORK (U.S.D.C. CT phv10355)
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS

                **P.O. Box 868, Ben Franklin Station**
                **Washington, D.C. 20044**
                **Tel: (202) 598-6073**
                **Email: Thomas.B.York@usdoj.gov**
                ***Attorneys for Defendants***